**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.: 13-cv-01229-REB-NYW

CELESTE SHAW;
JUDITH VERHEECKE;
SHABNAM SHEILA DEHDASHTIAN;
MEDHAT GAREEB; and
DEJAN NAGL on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

INTERTHINX, INC., a California Corporation; and
VERISK ANALYTICS, INC., a Delaware Corporation,

      Defendants.

---

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT AND PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

---

**Blackburn, J.**

The matters before me are (1) **Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards** [#242],[1] filed March 2, 2015; and (2) **Plaintiffs' Unopposed Motion for Final Approval of Class and Collective Action Settlement** [#243], filed March 2, 2015.  I held a hearing on these motions on April 3, 2015. Having considered the motions and the file, and being fully apprised of the premises,  I grant the motions.

---

[1]  "[#242]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

## I. BACKGROUND

After nearly two years of contentious litigation in three separate lawsuits, named plaintiffs Celeste Shaw, Judith Verheecke, Shabnam Sheila Dehdashtian, Medhat Gareeb, and Dejan Nagl ( "Named Plaintiffs") and class counsel from Lewis Kuhn Swan PC, Rowdy Meeks Legal Group, LLC, Rukin Hyland Doria & Tindall LLP, and The Spivak Law Firm ("Class Counsel") obtained a settlement of this class/collective action that creates a common fund worth up to $6 million, plus employer's share of employment taxes.[2]   Named Plaintiffs and Defendants Interthinx, Inc., and Verisk Analytics, Inc. ("Defendants"), memorialized the settlement in a Joint Stipulation of Settlement and Release ("Settlement"), filed with the court on November 4, 2014.  (*See* [#233-1, Ex. A].)

The Settlement specifically resolves wage and hour claims of four proposed settlement classes of Auditors and Underwriters ("AUs") employed by Interthinx: (a) those employed in Colorado between May 9, 2010, and June 30, 2014 ("Colorado Class"); (b) those employed in California between June 28, 2009, and June 30, 2014 ("California Class"); (c) those employed in Missouri between May 9, 2010, and June 30, 2014 ("Missouri Class"); and (d) those employed in any other state between May 9, 2010, and June 30, 2014, and who are not members of the California, Colorado, or Missouri Classes ("FLSA Class") (collectively, the "Settlement Classes").

---

[2] This dispute was being litigated in three separate cases prior to reaching a global settlement: this case; ***Dehdashtian et al. v. Interthinx, Inc. et al.,*** Case No. SACV-13-0989-RGK, pending in the United States District Court for the Central District of California; and ***Nagl v. Interthinx, Inc.***, Case No. BC526821, pending in the Superior Court, Los Angeles County, State of California.  In the interest of judicial economy, the parties agreed to use this case as the vehicle to effectuate settlement, and on October 7, 2014, I accepted for filing Plaintiffs' Second Amended Complaint [#224].

I granted preliminary approval of the Settlement on November 21, 2014, and certified the classes for settlement purposes [#235].  Thereafter, the appointed settlement administrator ("Settlement Administrator") mailed notice and (where applicable) claim forms to the 667 members of the Settlement Classes.  Five hundred and ninety-one class (591) members have filed claim forms or previously opted into the action.  No objections to the Settlement have been filed.

Class Counsel, comprising eight attorneys, now move the court to grant final approval to the Settlement and award them $2 million in attorney fees (33% of the maximum value of the common fund) and $62,388.58 in litigation expenses.  Class Counsel further request that the court approve $10,000 service awards to each of the Named Plaintiffs and $2,500 service awards to each of the two deposed opt-in Plaintiffs, Heather Callaway and Jerry-Ray McMinn ("Deposed Opt-in Plaintiffs").  For the reasons set forth below, I grant final approval of the Settlement, award the requested attorneys' fees, expenses, and incentive awards, direct the entry final judgment; and dismiss this action with prejudice.

## II.  ANALYSIS

### A.    The Settlement is Fair, Reasonable, and Adequate

It is well settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First National Bank of Pauls Valley*, 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910).  Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources.

In the class action context, the court must approve any settlement for it to be valid. Fed. R. Civ. P. 23(e) provides the process and procedural requirements for a court's approval of a class action settlement.   Under that Rule, approval of a settlement is a two-step process.   **Id.**   The court first "certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement."   ***In re Crocs, Inc. Securities Litigation***, 2013 WL 4547404 at *3 (D. Colo. Aug. 28, 2013).   In the second step, after notice has been sent, the Court holds a fairness hearing to address objections and decide whether to grant final approval.   ***Lucas v. Kmart Corp.***, 234 F.R.D. 688, 693 (D. Colo. 2006).

At the second stage, the court may approve the settlement only if, after a hearing, the court finds the settlement to be "fair, reasonable, and adequate."   Fed. R. Civ. P. 23(e)(1)(C).   Courts consider the following four factors in making this assessment:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

***Rutter & Wilbanks Corp. v. Shell Oil Co.***, 314 F.3d 1180, 1188 (10th Cir. 2002), ***cert. denied***, 123 S.Ct. 2275 (2003).

"Importantly, in evaluating the fairness of the settlement, courts are not to decide the merits of the case or resolve unsettled legal questions."   ***Wilkerson v. Martin Marietta Corp.***, 171 F.R.D. 273, 284 (D. Colo. 1997).   "This is because the essence of settlement

is compromise, and settlements are generally favored." ***Id.***  Viewed against these standards, I grant final approval of the Settlement.

      1.   <u>The Settlement was Fairly and Honestly Negotiated</u>

I find the Settlement was fairly and honestly negotiated.  This factor is examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that might have marred the negotiations themselves." ***Malchman v. Davis***, 706 F.2d 426, 433 (2nd Cir. 1983).  I have previously found this factor to be satisfied where the parties were "represented by competent, seasoned attorneys who conducted [the] litigation vigorously and professionally," the "plaintiffs' claims were challenged and refined through several amended complaints and associated motions to dismiss," and "[s]ubstantial discovery . . . was completed before the settlement was negotiated fully." ***In re Qwest Communications International, Inc. Securities Litigation***, 625 F.Supp.2d 1133, 1137-1138 (D. Colo. 2009).

Here, Class Counsel's declarations demonstrate they have vigorously litigated this case and have extensive experience in wage and hour class/collective action litigation. The parties further engaged in substantial discovery before negotiating the Settlement. From the declarations, I understand that the parties exchanged tens of thousands of pages of documents, took or defended several depositions, propounded written discovery, exchanged damage data, and conducted numerous interviews of class members. Plaintiffs moved for, and Defendants opposed class certification, and Defendants had filed a Motion to Dismiss.  The parties agreed to stay the proceedings to participate in mediation.  The parties thereafter conducted a mediation with Mark Rudy, a prominent and experienced

employment class action mediator who was able to broker a settlement.

I find the Settlement to be the result of intensive, arm's-length negotiations involving experienced counsel who are well-versed in employment law, class action litigation procedures, and the legal and factual issues of this case. Accordingly, the Settlement meets this test.

    2.    <u>Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt</u>

I also find that serious questions of law and fact exist in this case, placing the ultimate outcome of this litigation in doubt. "The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *Qwest*, 625 F. Supp. at 1138. This factor, however, does not require the court to evaluate the actual merits of the case. *See Lucas*, 234 F.R.D. at 693-94.

In this case, the parties vigorously disputed, among other things, class certification, whether AUs are exempt from receiving overtime compensation, whether any alleged wage-and-hour violation was willful, and whether AUs worked in excess of forty (40) hours per week, and if so, the number of hours they worked. A finder of fact or the court could reach divergent conclusions on these issues. Additionally, there is a significant question as to whether Named Plaintiffs would have prevailed on their certification motions. Accordingly, I find that this factor bodes in favor of approving the Settlement.

    3.    <u>The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief and Protracted and Expensive Litigation</u>

I find that the value of the Settlement outweighs the mere possibility of future relief

and protracted and expensive litigation.  "[A] cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment."  ***Villegas v. J.P. Morgan Chase & Co.***, 2012 WL 5878390 at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted).

Here, the Settlement involves fair and reasonable payments in light of the risks of further litigation.  Class Counsel believe a realistic calculation of total potential damages in this case is approximately $15 million, yielding a net settlement amount that could reasonably constitute about forty (40) percent of the damages potentially recoverable by the Settlement Classes – a significant recovery in light of the risks of litigation and the fact many of the class members may never have filed individual claims for unpaid overtime. The Settlement is thus fair, adequate, and reasonable, particularly given the significant risks and costs associated with continued litigation.  ***See In re Mego Financial Corp. Securities Litig****ation*, 213 F.3d 454, 459 (9th Cir. 2000) (recovery of 16.67% of the potential recovery adequate); ***Villegas***, 2012 WL 5878390 at *6 (recovery of 15% of the potential recovery adequate).

### 4.    The Judgment of the Parties Confirms the Settlement is Reasonable

Class Counsel's judgment regarding the fairness of the Settlement is "entitled to considerable weight."  ***Lucas***, 234 F.R.D. at 695 (internal quotations and citations omitted).  Class Counsel, who are experienced class litigators, believe the Settlement is a fair and reasonable resolution of the claims and strongly recommend I grant final approval.

The reaction from the class members to the Settlement has likewise been extraordinarily positive.  The Settlement Administrator mailed notices to 667 class members, a great majority participated in the Settlement, not a single person objected to the Settlement, and only one class member excluded himself from it.  This is a strong indication that the Settlement is fair, reasonable, and adequate.  *See Rutter*, 314 F.3d at 1189.   I find this factor weighs in favor of granting final approval.

5.      The Notice to the Class Members was Sufficient

In accordance with the Settlement and my Orders of November 21, 2014 [#235], February 9, 2015 [#239], and February 23, 2015 [#241], the Settlement Administrator mailed notice of the Settlement to 667 class members.  The notice explained the nature of the action and the terms of the Settlement (including the settlement amount, individual class members' estimated minimum recovery, the attorney fees requested, how settlement payments will be calculated, and the claims that will be released) and how the class members could submit claims, exclude themselves, or object to the terms of the settlement.  The contents of the notice were thus sufficient.  *See Villegas*, 2012 WL 5878390 at *8 (approving a notice containing the same categories of information).

Pursuant to my Order of November 21, 2014 [#235], the Settlement Administrator mailed the notice to the class members by first class mail and afforded them fifty-two days from the mailing to participate, exclude themselves, and/or object.  The Settlement Administrator also ran a National Change of Address search and sent reminder postcards to class members who had not sent in claim forms or opted out of the Settlement thirty days before the end of the claims period.

On February 9 and 23, 2015, I entered Orders [## 239 & 241] permitting the parties to include in the Settlement certain quality control employees, to send notice and claim forms to the quality control employees, and to send notice and claim forms to certain AUs who were inadvertently omitted from the class list or who had incorrect paycheck data submitted to the Settlement Administrator.  The Orders also enlarged the original deadline to submit claim forms for the quality control employees and inadvertently omitted AUs. The Settlement Administrator sent notice of the Settlement to the quality control employees and AUs, and, for the quality control employees added to the Settlement, the Settlement Administrator made a phone call to each of them to ensure they received the notice.  Finally, the Settlement Administrator emailed the notice and claim forms to certain quality control employees and inadvertently omitted AUs.  The notice and notice plan were thus adequate under the circumstances and satisfied the requirements of Fed. R. Civ. P. 23(e), 29 U.S.C. § 216, and due process.

Accordingly, I find and conclude that the Settlement is fair, adequate, and reasonable.  I grant final approval of the Settlement.

**B.    Class Counsel's Requested Attorneys' Fees are Reasonable as a Percentage of the Common Fund**

In class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund.  *See Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994).  Courts generally award attorney fees in common fund cases "based on a percentage of the common fund obtained for the benefit the class," thus, "proportionately spreading payment of attorney fees among the class members." *Lucken Family Ltd. Partnership, LLP v. Ultra Resources, Inc.*, 2010 WL 5387559 at *2-3 (D.

9

Colo. Dec. 22, 2010).  "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis, as in this case."  *Id.* at *2 (citation and internal quotation marks omitted); *see also Anderson v. Merit Energy Co.*, 2009 WL 3378526 at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created.")

In assessing the reasonableness of the percentage of the common fund awarded to class counsel for attorneys' fees, courts within the Tenth Circuit weigh the twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Gottlieb*, 43 F.3d at 483. The *Johnson* factors include:

(1) the time and labor required;
(2) the novelty and difficulty of the case;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorneys due to acceptance of the case;
(5) the customary fee for similar work;
(6) whether the fee is fixed or contingent;
(7) any time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.  "[A] court may assign different relative weights to the factors-that is, none of the factors is inherently equiponderant, preponderant, or dispositive." *Stalcup v. Schlage Lock Co.*, 505 F.Supp.2d 704, 705-06 (D. Colo. 2007).

These factors support approval of the requested attorneys' fees.

### 1.   The Time and Labor Required

Class Counsel represent they expended a total of 3,326.80 hours in bringing this case to a successful Settlement.  The total hours, spread across three lawsuits in three different jurisdictions, include, among other things:  time expended reviewing tens of thousands of pages of documents; filing, responding to, and reviewing numerous motions; attending several court hearings; defending a number of depositions; traveling out of state on multiple occasions; and preparing for and attending mediation.  Counsel made a significant time investment in this case, and thus, the "time and labor" factor favors the requested fee award.

### 2.   The Novelty and Difficulty of the Questions Presented

Two of the fundamental questions in this case were: (1) whether AUs are entitled to overtime compensation; and (2) whether this case may proceed as a class/collective action.  Courts across the country have reached diverging opinions on these questions in similar challenges to the classification of auditors and underwriters.  ***Cf. Lutz v. Huntington Bancshares Inc.***, 2014 WL 2890170 at *8 (S.D. Ohio June 25, 2014) (denying Fed. R. Civ. P. 23 certification in overtime dispute for class of underwriters); ***McKeen-Chaplin v. Provident Savings Bank, FSB***, 2013 WL 4056285 at *5 (E.D. Cal. Aug. 9, 2013) (granting Fed. R. Civ. P. 23 and 29 U.S.C. § 216 certification for class of underwriters in overtime dispute).  Analysis of these questions and effective prosecution of the claims required not only extensive knowledge of applicable caselaw, statutes, and regulations, but also insight on successfully litigating cases under Fed. R. Civ. P. 23 and

the FLSA.   Accordingly, the "novelty and difficulty" factor supports the requested fee award.

### 3. The Skill Requisite to Perform the Legal Service Properly

The wage and hour issues in this litigation are governed by highly technical state and federal wage statutes and regulations.   Class Counsel focus their practices in this area of the law and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis.   Class Counsel thus had the requisite skill to perform the legal service required in this complex litigation.

### 4. The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case

There is an inherent preclusion of other work in litigating a complex case such as this on a contingency fee basis.   Class Counsel were "precluded by the ticking of the clock from taking certain other cases given that they [had] decided to take a chance on a possible recovery in a contingency fee rather than strictly working on paid hourly wages." *Whittington v. Taco Bell of America, Inc*., 2013 WL 6022972 at *6 (D. Colo. Nov 13, 2013).   Indeed, there was "the possibility in a case of this kind that [Class Counsel], having given up other cases in order to actively pursue this case, will actually recover no payment for [their] time and efforts." *Id.*   Accordingly, Class Counsel spent significant hours on this case, remuneration for which was entirely contingent on the outcome of the matter.

### 5. The Customary Fee for Similar Work

"The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Lucken Family Partnership*, 2010 WL 5387559 at *6.   Other courts have similarly recognized that

"[t]he percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created[,]" *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249-50 (S.D. Ohio 1991), and that fees within this rage are "presumptively reasonable," *Vaszlavik v. Storage Technology Corp.*, 2000 WL 1268824 at *4 (D. Colo. March 9, 2000).  *See also Cimarron Pipeline Construction, Inc. v. National Council on Compensation Insurance*, 1993 WL 355466 at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.")

Here, Class Counsel seek $2 million in attorneys' fees-one third of the $6 million maximum value of the common fund.  This is well within the percentage range approved in similar cases.  *See e.g. Whittington*, 2013 WL 6022972 at *6 ("Together the fees and costs amount to approximately 39% of the fund as a whole.  This is within the normal range for a contingent fee award."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472 (S.D.N.Y. 2013) (awarding $1.617 million in attorneys' fees in $4.9 million common fund settlement of overtime claims); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910  at *8 (S.D.N.Y. Oct. 5, 2012) (awarding fees equal to 33.33% of the $5.25 million common settlement); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp.2d 337, 339-40 (S.D.N.Y. 2012) (awarding fees equal to 33.33% of the $850,000 common fund settlement); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580 at *9-10 (S.D.N.Y. Aug. 23, 2010) (awarding fees equal to 33% of $800,000 settlement); *Braun v. Wal-Mart, Inc.*, 2009 WL 1592532 (Minn. Dist. Ct. June 1, 2009) (38% fee award in a $54 million settlement); *Cimarron Pipeline Construction*, 1993 WL 355466 at *2 (noting that "[f]ees

13

in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").   Thus, the "customary fee" factor supports the requested fee award.

6.   Whether the Fee is Fixed or Contingent

Class Counsel agreed to represent Named Plaintiffs on a contingency fee basis. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." **Wells v. Sullivan**, 907 F.2d 367, 371 (2nd Cir. 1990).  Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." **In re Abrams & Abrams, P.A.**, 605 F.3d 238, 245-46 (4th Cir. 2010).  "Access to the courts would be difficult to achieve without compensating attorneys for that risk." **Id.**

In this case, Class Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial.  This factor thus weighs in favor of the requested fees because Class Counsel assumed significant risk of nonpayment when they agreed to represent Named Plaintiffs on a contingency fee basis.  **See Qwest**, 625 F. Supp. at 1151 ("A contingent fee . . . is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.")

### 7.   Time Limitations Imposed by the Client or the Circumstances

The **Johnson** court held that priority work delaying a lawyer's other work is entitled to a premium.   In this case, Class Counsel had to file expeditiously their motions for certification, forcing them to expedite the discovery process.   This factor therefore weighs in favor of the requested fee award.

### 8.   The Amount Involved and the Results Obtained

"The degree of success a plaintiff enjoys is a critical factor in determining the amount of fees to be awarded." **Dalal v. Alliant Techsystems, Inc.**, 927 F. Supp. 1374, 1381 (D. Colo. 1996), **aff'd**, 182 F.3d 757 (10th Cir. 1999) (citation and internal quotation marks omitted).   Here, the $6 million Settlement represents a significant recovery on behalf the Settlement Classes in light of the numerous risks, including, among others, summary judgment, certification, and establishing the number of hours worked by class members.   This is an excellent result, and thus, the "amount involved and results obtained" factor supports the proposed fee award.

### 9.   The Experience, Reputation, and Ability of the Attorneys

Class Counsel's declarations demonstrate they focus their practices on, and have extensive experience in, representing workers in wage and hour litigation, including class and collective action cases.   Class Counsel have shown their ability by achieving the excellent result obtained for the classes in this case. Thus, the "experience, reputation and ability" factor supports the requested fee award.

### 10.   The "Undesirability" of the Case

Class Counsel undertook significant risk in agreeing to represent Named Plaintiffs in this case.  The risk assumed by Class Counsel is similar to that recognized by this court in *Qwest*:

> [T]his case required [Class Counsel] to advance large amounts of time, money, and other resources to determine if any recovery might be had.  At bottom, the risk to [Class Counsel] was financial.  Most attorneys are unable or unwilling to take such a financial risk.

625 F. Supp. 2d at 1152-53.  Accordingly, in light of the risk of nonpayment of the costs advanced by Class Counsel and the time they invested in this case, this factor supports the requested fee award.

11.   The Nature and Length of the Professional Relationship with the Client

"In describing this factor, the *Johnson* court noted that a lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer." *Id.* Unlike corporate clients, who may need future legal services from their counsel, the likelihood that many class members will be seeking additional representation from Class Counsel is slim.  Moreover, the wage claims asserted in this case do not lend themselves to continuous, long-term attorney-client relationships.  This factor thus weighs in favor of the requested fee award.

12.   Awards in Similar Cases

Finally, as set out above, the $2 million requested fee award is in line with awards made in similar wage and hour class and collective actions.  Accordingly, this factor supports the requested fee award.

I therefore find that the requested attorneys' fee award of $2 million is reasonable

16

as a percentage of the common fund, and thus, should be approved.

**C.      A Lodestar Crosscheck Supports Class Counsel's Requested Attorneys' Fees.**

Courts using the percentage method will often crosscheck the requested award with the lodestar amount.  ***See In re Crocs, Inc. Securities Litigation***, 2014 WL 4670886 at *4.  Here, Class Counsel represent they have spent at least 3,326.80 hours litigating this matter.  The billing rates for the eight attorneys and numerous staff members involved in this lawsuit range from $150 to $675 per hour and are consistent with rates in the states in which Class Counsel regularly practice.  Class Counsel's lodestar-which is calculated by multiplying the hours worked on the litigation by the hourly rates of the attorneys and legal assistants-is $1,452,668.75.

The requested $2 million fee award represents a lodestar multiplier of 1.37 which is significantly lower than lodestar multipliers that Colorado federal courts and other courts consistently have approved in other class action cases. ***See In re Miniscribe Corp.***, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on a lodestar multiplier of 2.57); ***Vizcaino v. Microsoft Corp.***, 290 F.3d 1043, 1050 (9th Cir.) (lodestar multiplier of 3.65 in the cross-check analysis was reasonable),***cert. denied***, 123 S.Ct. 536 (2002); ***Mishkin v. Zynex, Inc***., 2012 WL 4069295 at *2 (D. Colo. Sep. 14, 2012) (collecting District of Colorado cases approving multipliers ranging from 2.5 to 4.6); ***Lucas v. Kmart Corp.***, 2006 WL 2729260 at *9 (D. Colo. July 27, 2006) (lodestar multiplier of 1.87 in the cross-check analysis was reasonable).


Accordingly, I approve the requested fee award of $2 million.  The attorneys' fee

award shall be paid from the Settlement.

### D.    Class Counsel's Expenses are Reasonable

Class counsel seek an award of expenses of $62,388.58. I have reviewed the costs outlined in Class Counsel's declarations and find the costs to be reasonable in the context of this case. No objections have been filed challenging Class Counsel's request for an award of costs. I exercise my discretion and award Class Counsel $62,388.58 to reimburse the costs of prosecuting this litigation. These expenses are to be paid from the Settlement.

### E.    The Requested Incentive Awards are Reasonable

"[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Lucken Family Partnership*, 2010 WL 5387559 at *8. The factors to consider in determining an incentive award include: (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *Id.*

Named Plaintiffs and Class Counsel request approval of $10,000 incentive awards to each of the five Named Plaintiffs and $2,500 incentive awards to each of the two Deposed Opt-in Plaintiffs – representing *in toto* less than 1% of the maximum value of the common fund, or .1667% for each Named Plaintiff and .04167% for each Deposed Opt-in Plaintiff.

The requested incentive awards are reasonable. Named Plaintiffs litigated this case in three separate fora for nearly two years, dedicated many hours to this dispute, and faced

the risk of a cost award against them. By way of example, Named Plaintiff Celeste Shaw submitted to two depositions, testified at an evidentiary hearing, completed several declarations, attended numerous meetings with Class Counsel, traveled from Colorado to California for mediation, and faced the possibility of an award of costs and attorneys' fees against her for the claim under the Colorado Wage Act. *See* C.R.S. § 8-4-110(1). Likewise, Named Plaintiff Judith Verheecke traveled from Missouri to Colorado twice, once for her deposition and again to testify at an evidentiary hearing. The two Deposed Opt-in Plaintiffs also dedicated considerable time to the prosecution of this matter, providing declarations, submitting to two depositions each, meeting with Class Counsel of several occasions, and attending an evidentiary hearing.

In light of the forgoing, the requested incentive awards are reasonable. Indeed, the requested amounts are in line with incentive awards awarded in other cases. *See Lucken Family Partnership*, 2010 WL 5387559 at *8 (approving $10,000 service award to named plaintiff); *Mego Financial Corp.*, 213 F.3d at 463 (approving $5,000 incentive award to each plaintiff where settlement was valued at $1.75 million); *Cook v. Natured*, 142 F.3d 1004, 1016 (7th Cir.1998) (approving incentive award of $25,000 for named plaintiff where settlement was valued at $13 million); *Enterprise Energy Corp.*, 137 F.R.D. at 251 (approving incentive award totaling $300,000 to class representatives out of a settlement fund of $56.6 million, which was 0.56% of the common fund). The requested incentive awards therefore will be approved and shall be paid from the Settlement.

## III. ORDERS

**THEREFORE, IT IS HEREBY ORDERED** as follows:

1.    That **Plaintiffs' Unopposed Motion for Final Approval of Class and Collective Action Settlement** [#243], filed March 2, 2015, is granted;

2.   That the court finds that the Settlement is fair, reasonable, and adequate to the Class Members and meets the prerequisites for a class action under Fed. R. Civ. P. 23 and a collective action under 29 U.S.C. § 216;

3.   That the Settlement Classes are finally certified for settlement purposes only;

4.    That in accordance with Fed. R. Civ. P. 23, 29 U.S.C. § 216(b), and the requirements of due process, all Class Members have been given proper and adequate notice of the Settlement.  Based on the evidence submitted by the parties, the Settlement, the arguments of counsel, and all the files, records, and proceedings in this case, the court finds that the notice and notice plan implemented pursuant to the Settlement and the court's order preliminarily approving the Settlement (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the class members of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the fairness hearing; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of Fed. R. Civ. P. 23, and any other applicable law.

5.    That **Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards** [#242], filed March 2, 2015, is granted;

6.   That Class Counsel are awarded attorney fees in the requested amount of $2,000,000 and litigation expenses in the requested amount of $62,388.58;

7.  That Named Plaintiffs are awarded incentive payments in the requested amount of $10,000 each and Deposed Opt-in Plaintiffs are awarded incentive payments in the requested amount of $2,500;

8.  That the payment of the Settlement funds in accordance with the Settlement and the above awards is approved;

9.  That Defendants will deposit the settlement funds into an interest-bearing account, through the settlement administrator, within **fifteen (15) business days** of the date of this Order;

10.  That based on the entry of this Order, and pursuant to Fed. R. App. P. 4, interested parties have **thirty (30) days** to file an appeal of this Order, and if no appeal is timely filed, the settlement administrator shall transmit class counsel's attorney fees and costs to each class counsel in the amount agreed on by them as soon as practicable, but no later than **fourteen (14) calendar days**, after the period to timely appeal expires;

11.  That final judgment shall enter with respect to all released claims of the class members.  That without affecting the finality of this judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement; (b) distribution of the Settlement proceeds, the incentive awards, and the attorneys' fees and expenses; and (c) all other proceedings related to the implementation and interpretation; and

12.  That on Defendants' payment of the entire Settlement amount to the Settlement Administrator or within **thirty (30) days** after the date of this Order, whichever is earlier, this case shall be dismissed with prejudice with each party to bear its own costs and attorney fees, except as otherwise provided in this Order.

Dated April 21, 2015, at Denver, Colorado.

BY THE COURT:

Bob Blackburn

Robert E. Blackburn
United States District Judge